1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12   STEVEN GRILL,
                                   CIV NO. 10-CV-03057-FCD/GGH
13          Plaintiff,

14      v.                         MEMORANDUM AND ORDER

15   BAC HOME LOANS SERVICING LP;
     Bank of America N.A.,;
16   RECONTRUST COMPANY N.A.; and
     DOES 1-10, inclusive
17
            Defendants.
18   _____/

19                        ----oo0oo----

20        This matter is before the court on the motions of defendant

21   BAC Home Loans Servicing LP ("BAC") to dismiss and to strike

22   plaintiff Steven Grill's ("plaintiff") Complaint pursuant to

23   Federal Rules of Procedure 12(b)(6) and 12(f).  Plaintiff opposes

24   BAC's motions.  For the reasons set forth below,[1] BAC's motion to

25

26   _____

27        [1]   Because oral argument will not be of material
     assistance, the court orders this matter submitted on the briefs.
28   E.D. Cal. L.R. 230(g).

                              1

1  dismiss is GRANTED.[2]

2  **BACKGROUND**

3       Plaintiff brought this action against BAC for conduct
4  arising out of a Home Affordable Modification Trial Period Plan
5  (the "Plan") that BAC sent plaintiff on or about October 22,
6  2009.  (Compl., filed Oct. 12, 2010 [Docket # 1], ¶ 65.)
7  Plaintiff alleges that BAC failed "to honor its agreement with
8  [p]laintiff to modify his mortgage and prevent foreclosure."
9  (Id. ¶ 1)

10      Plaintiff claims the terms of the Plan state that if he met
11 all the requirements listed, BAC was obligated to provide him
12 with a modification of his current mortgage loan.  (Id. ¶ 3.)  He
13 alleges that he met the terms of the Plan "by submitting the
14 required documentation and making payments."  (Id.)  Plaintiff
15 alleges that "[d]espite his efforts, [BAC] has ignored its
16 contractual obligation to permanently modify his loan."  (Id.)
17 Plaintiff alleges that "[BAC's] actions thwart the purpose of the
18 [United States Treasury's Home Affordable Modification Program
19 ("HAMP")] and are illegal under California law.  (Id. at 4.)

20      Plaintiff's Complaint sets forth six causes of action: (1)
21 breach of contract based on the Plan; (2) breach of the implied
22 covenant of good faith and fair dealing; (3) breach of contract
23 based on plaintiff's status as an intended third-party
24 beneficiary to the Servicer Participation Agreement ("SPA"); (4)
25 promissory estoppel; (5) violation of the Rosenthal Fair Debt

26

27      [2]   Because the court grants BAC's motion to dismiss, it
   does not reach the motion to strike.  Defendant's motion to
28 strike is DENIED as MOOT.

2

1  Collection Practices Act; and (6) unfair and fraudulent business

2  practices in violation of the California Unfair Competition Law,

3  California Business & Professions Code Sections 17200 *et seq.*.

4                                    **STANDARDS**

5      Under Federal Rule of Civil Procedure 8(a), a pleading must

6  contain "a short and plain statement of the claim showing that

7  the pleader is entitled to relief." See <u>Ashcroft v. Iqbal</u>, 129

8  S. Ct. 1937, 1949 (2009).  Under notice pleading in federal

9  court, the complaint must "give the defendant fair notice of what

10 the claim is and the grounds upon which it rests." <u>Bell Atlantic</u>

11 <u>v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations

12 omitted).  "This simplified notice pleading standard relies on

13 liberal discovery rules and summary judgment motions to define

14 disputed facts and issues and to dispose of unmeritorious

15 claims." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002).

16     On a motion to dismiss, the factual allegations of the

17 complaint must be accepted as true. <u>Cruz v. Beto</u>, 405 U.S. 319,

18 322 (1972).  The court is bound to give plaintiff the benefit of

19 every reasonable inference to be drawn from the "well-pleaded"

20 allegations of the complaint. <u>Retail Clerks Int'l Ass'n v.</u>

21 <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not

22 allege "'specific facts' beyond those necessary to state his

23 claim and the grounds showing entitlement to relief." <u>Twombly</u>,

24 550 U.S. at 570.  "A claim has facial plausibility when the

25 plaintiff pleads factual content that allows the court to draw

26 the reasonable inference that the defendant is liable for the

27 misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.

28 /////

                                    3

1    Nevertheless, the court "need not assume the truth of legal
2    conclusions cast in the form of factual allegations." United
3    States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th
4    Cir. 1986).  While Rule 8(a) does not require detailed factual
5    allegations, "it demands more than an unadorned, the defendant-
6    unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.  A
7    pleading is insufficient if it offers mere "labels and
8    conclusions" or "a formulaic recitation of the elements of a
9    cause of action." Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at
10   1950 ("Threadbare recitals of the elements of a cause of action,
11   supported by mere conclusory statements, do not suffice.").
12   Moreover, it is inappropriate to assume that the plaintiff "can
13   prove facts which it has not alleged or that the defendants have
14   violated the . . . laws in ways that have not been alleged."
15   Associated Gen. Contractors of Cal., Inc. v. Cal. State Council
16   of Carpenters, 459 U.S. 519, 526 (1983).

17   Ultimately, the court may not dismiss a complaint in which
18   the plaintiff has alleged "enough facts to state a claim to
19   relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949
20   (citing Twombly, 550 U.S. at 570).  Only where a plaintiff has
21   failed to "nudge [his or her] claims across the line from
22   conceivable to plausible," is the complaint properly dismissed.
23   Id. at 1952.  While the plausibility requirement is not akin to a
24   probability requirement, it demands more than "a sheer
25   possibility that a defendant has acted unlawfully." Id. at 1949.
26   This plausibility inquiry is "a context-specific task that
27   requires the reviewing court to draw on its judicial experience
28   and common sense." Id. at 1950.

4

1    In ruling upon a motion to dismiss, the court may consider
2  only the complaint, any exhibits thereto, and matters which may
3  be judicially noticed pursuant to Federal Rule of Evidence 201.
4  See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir.
5  1988); Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F.
6  Supp. 2d 1035, 1042 (C.D. Cal. 1998).

7                               **ANALYSIS**

8  **A.   Defendant's Exhibits**

9    Rule 201 permits a court to take judicial notice of an
10 adjudicative fact "not subject to reasonable dispute" because the
11 fact is either "(1) generally known within the territorial
12 jurisdiction of the trial court or (2) capable of accurate and
13 ready determination by resort to sources whose accuracy cannot
14 reasonably be question." Fed. R. Evid. 201(b).  The court can
15 take judicial notice of matters of public record, such as
16 pleadings in another action and records and reports of
17 administrative bodies.  See Emrich v. Touche Ross & Co., 846 F.2d
18 1190, 1198 (9th Cir. 1988).

19   "Even if a document is not attached to a complaint, it may
20 be incorporated by reference into a complaint if the plaintiff
21 refers extensively to the document or the document forms the
22 basis of the plaintiff's claim." United States v. Ritchie, 342
23 F.3d 903, 908 (9th Cir. 2003).  "The defendant may offer such a
24 document, and the district court may treat such a document as
25 part of the complaint, and thus may assume that its contents are
26 true for purposes of a motion to dismiss under Rule 12(b)(6)."
27 Id.  The policy concern underlying the rule is to prevent
28 plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately

1  omitting references to documents upon which their claims are

2  based."   <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998).

3      BAC requests the court to take judicial notice of various

4  documents, including (1) the Note signed by plaintiff (Ex. A),

5  (2) the original deed of trust signed by plaintiff (Ex. B), and

6  (3) the Home Affordable Modification Trial Period Plan (Ex. C).

7  Plaintiff's claims for relief depend upon, and/or repeatedly

8  refer to, information contained in Exhibit C.  (<u>See</u>, <u>e.g.</u>, Compl.

9  ¶¶ 3, 65, 66, 75, 76, 77, 79, 80, 82, 83, 97, 98, 99, 110, 114,

10 Prayer ¶ 5).  In addition, Exhibit A and Exhibit B are matters of

11 public record.  Because these exhibits form the basis of several

12 of plaintiff's claims for relief, the court takes judicial notice

13 of these documents.  Accordingly, the court will treat exhibits

14 A, B, and C as part of the complaint and will assume that their

15 contents are true for purposes of the motion to dismiss.  <u>See</u>

16 <u>Ritchie</u>, 342 F.3d at 908.

17 **B.    Breach of Contract Based on Trial Period Plan**

18      Plaintiff's first claim for relief alleges that defendant

19 BAC breached the terms of the Plan.  Specifically, plaintiff

20 alleges that he performed the terms and conditions of the Plan by

21 providing the requested documents and making trial period

22 payments for three successive months and seven months after the

23 final trial period payment.  (Compl. ¶ 67.)  Plaintiff alleges

24 that BAC "breached the [Plan] by failing to offer [p]laintiff a

25 permanent HAMP modification after payment of the trial period

26 payments."  (Compl. ¶ 77.)  BAC moves to dismiss the claim

27 arguing that no binding contract existed.  (Def.'s Mot. to

28 Dismiss ("MTD"), filed Nov. 19, 2010 [Docket # 5], at 6.)

"[T]o state a claim for breach of contract, the plaintiff must plead: 1) *the existence of the contract*; 2) plaintiff's performance or excuse for nonperformance of the contract; 3) defendant's breach of the contract; and 4) resulting damages." Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n. 6 (2004) (emphasis added). It is well settled under California law "that there is no contract until there has been a meeting of the minds on all material points." Banner Entm't, Inc. v. Superior Court of Los Angeles County, 62 Cal. App. 4th 348, 357, 357-58 (1998) (emphasis removed). Further, when it is clear that the proposed written contract would become operative only when signed by the parties, the failure to sign the agreement means no binding contract was created. Id. at 358 (citing Beck v. Am. Health Group Int'l, Inc., 211 Cal. App. 3d 1555, 1562 (1989)).

On a motion to dismiss, the court need not accept allegations as true if they are contradicted by documents before the court. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). "[W]hen a written instrument is attached to the pleading and properly incorporated therein by reference, the court may examine the exhibit and treat the pleader's allegations of its legal effect as surplusage." Burnett v. Chimney Sweep, 123 Cal. App. 4th 1057, 1064 (2004) (quoting Lumbermens Mut. Cas. Co. v. Vaughn, 199 Cal. App. 3d 171, 178 (1988)).

Plaintiff's allegations fail to sufficiently allege a binding contract between plaintiff and BAC regarding a loan modification. Indeed, plaintiff's claim that a binding contract existed between BAC and himself is contradicted by BAC's

7

1   exhibits.  In the first sentence of BAC's Exhibit C, the document
2   provides: "*If* I am in compliance with this Trial Period Plan. . .
3   *then* the Servicer will provide me a . . . Modification Agreement
4   that would amend. . . the Loan Documents." (Request for Judicial
5   Notice ("RJN"), filed Nov. 19, 2010 [Docket #6], Exh. C, § 1)
6   (emphasis added).)  Section 2, titled "The Trial Period Plan,"
7   further provides in pertinent part: "I understand that *the Plan*
8   *is not a modification of the Loan Documents* and that the Loan
9   Documents *will not be modified unless and until* (i) I meet all of
10  the conditions required for modification, (ii) I receive a fully
11  executed copy of a Modification Agreement. . . .  I further
12  understand and agree that *the Servicer will not be obligated or*
13  *bound to make any modification* of the Loan Documents if I fail to
14  meet any one of the requirements under this Plan." (<u>Id.</u> at Ex.
15  C, § 2(G) (emphasis added).)  Finally, Section 3, titled "The
16  Modification," provides in pertinent part: "*If I comply* with the
17  requirements in Section 2 and . . . Section 1, *the Servicer will*
18  *[determine the new payment amount and] send me a Modification*
19  *Agreement for my signature which will modify my Loan Documents*. .
20  . .  Upon execution of a Modification Agreement *by the Servicer*
21  *and me*, this Plan shall terminate and the Loan Documents, as
22  modified by the Modification Agreement, shall govern the terms
23  between the Servicer and me." (<u>Id.</u> at Ex. C, § 3) (emphasis
24  added).

25      Accordingly, Exhibit C makes clear that providing the
26  requested documents was simply a part of the application process,
27  which plaintiff was willing to complete in the hope that BAC
28  would modify his loan.  Under the language of Exhibit C, a

8

binding modification would not result unless and until BAC determined that plaintiff complied with the requirements. If BAC so determined, then it would send plaintiff a modification agreement, including a new monthly payment amount, which both plaintiff and defendant would execute.

Plaintiff has not alleged or provided exhibits (1) that BAC determined plaintiff had met the requirements or (2) that BAC sent plaintiff a loan modification with a new monthly payment that was then executed by both plaintiff and BAC. As such, no binding contract has been alleged and BAC's motion to dismiss plaintiff's breach of contract claim is GRANTED with leave to amend.[3]

**C.    Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff's second claim for relief asserts that BAC breached the implied covenant of good faith and fair dealing. Plaintiff's claim is based on the same assertions set forth under his breach of contract claim; namely, that BAC breached the implied covenant of good faith and fair dealing by "[f]ailing to perform loan servicing functions consistent with its responsibilities to plaintiff . . . , [f]ailing to properly supervise its agents and employees . . . , [f]ailing to permanently modify loans and/or provide alternatives to foreclosure . . ., and [m]aking inaccurate calculations and

---

[3]    Plaintiff also alleges breach of oral contract. However, plaintiff's Complaint fails to set forth any facts relating to when such an oral contract was made, with whom, and under what terms. Plaintiff further fails to address the viability of any oral agreement in his opposition. Accordingly, defendant's motion to dismiss plaintiff's breach of contract claim arising out of any alleged oral agreement is GRANTED with leave to amend.

determinations of plaintiff's eligibility for trial or permanent
modification." (Compl. ¶ 83.)

"To establish a breach of an implied covenant of good faith
and fair dealing, a plaintiff must *establish the existence of a
contractual obligation*, along with conduct that frustrates the
other party's rights to benefit from the contract." <u>Fortaleza v.
PNC Fin. Servs. Group, Inc.</u>, 642 F. Supp. 2d 1012, 1021-22 (N.D.
Cal. 2009) (emphasis added).  Further, "a breach of the implied
covenant of good faith and fair dealing involves something beyond
breach of the contractual duty itself." <u>Careau & Co. v. Sec.
Pac. Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1394 (1990).  The
"implied covenant of good faith and fair dealing is limited to
assuring compliance with the express terms of the contract, and
cannot be extended to create obligations not contemplated by the
contract." <u>Pasadena Live, LLC v. City of Pasadena</u>, 114 Cal. App.
4th 1089, 1093-1094 (2004).

Because the court has concluded that plaintiff has not
sufficiently alleged the existence of a binding modification
agreement, BAC's motion to dismiss plaintiff's claim for breach
of the implied covenant of good faith and fair dealing is GRANTED
with leave to amend.

**D.   Breach of Contract Based on Intended Third-Party Beneficiary
       Status to the SPA**

Plaintiff's third claim for relief alleges that he is an
intended third-party beneficiary of the SPA between BAC and
Fannie Mae and that BAC breached the terms of the SPA.  (Compl.
¶¶ 89, 93).  Plaintiff asserts that "[BAC] failed to perform
under its SPA contracts in a manner which directly impacts

[p]laintiff." (Compl. ¶ 92). Specifically, plaintiff argues that he "is an intended third-party beneficiary sufficient to expect that his loan would be 'considered' for modification under HAMP rules." (Opp.'n at 12.) BAC moves to dismiss this claim arguing that plaintiff "does not have standing to enforce the SPA, and the SPA does not require that [BAC] modify [plaintiff's] loan." (MTD at 13).

The SPA is "governed by and construed under Federal law." (Compl. Exh. entitled "Commitment to Purchase Financial Instrument and Servicer Participation Agreement" [hereinafter "SPA"] § 11(A)). With regard to third-party beneficiaries, the Restatement of Contracts guides the Ninth Circuit. See Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210-11 (9th Cir. 2000). To recover under a contract, a third party "must show that the contract was made for its direct benefit - that it is an intended beneficiary of the contract." Id. at 1210 (citing Williams v. Fenix & Scisson, Inc., 608 F.2d 1204,1208 (9th Cir. 1979)). The Restatement of Contracts distinguishes between intended and incidental beneficiaries and explains:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1979) ("Restatement").

"To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or

11

implied intention of the parties to the contract to benefit the third party." <u>Klamath</u>, 204 F.3d at 1211.  More specifically, the questions turns on "whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." <u>Id.</u> (citing Restatement § 302(1)(b) cmt. d.).

     "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary. Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." <u>Id.</u> at 1211 (internal citations and quotations omitted).  The Ninth Circuit has noted that "this 'clear intent' hurdle is not satisfied by a contract's recitation of interested constituencies, vague hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind." <u>County of Santa Clara v. Astra U.S.A., Inc.</u>, 588 F.3d 1237, 1244 (9th Cir. 2009) (internal citations and quotations omitted).  Instead, the precise language of the contract must demonstrate a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries.  <u>Id.</u>

     In the present case, the documents attached to plaintiff's Complaint demonstrate that plaintiff is an incidental third-party beneficiary.  Although the SPA between BAC and Fannie Mae was entered into in part for the benefit of qualified borrowers, the language of the SPA does not support the conclusion that BAC and

Fannie Mae intended to grant qualified borrowers the right to enforce agreement.  Section 11E of the SPA states that "[t]he Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successor-in-interest."  (SPA, §11E.)

The Ninth Circuit has held that similar language did not manifest the parties' intent to grant third parties the right to enforce the contract.  <u>Klamath</u> 204 F.3d at 1212.  In <u>Klamath</u>, a group of irrigators attempted to assert third-party beneficiary status to a contract between the United States and a dam operator.  <u>Id.</u> at 1210.  Article 15 of the contract provided:

> This contract binds and inures to the benefit of the parties hereto, their successors and assigns, including without limitation any water users' organization or similar group which may succeed either by assignment or by operation of law to the rights of the United States hereunder.

<u>Id.</u>  The Ninth Circuit concluded that the language of the contract did not "give the [i]rrigators any rights besides those of incidental beneficiaries, because they have not succeeded, either by assignment or operation of law, to the rights of the United States.  <u>Id.</u>  While acknowledging that the contract was entered into with the irrigators in mind, the court reasoned that allowing the irrigators intended third-party status would extend to all persons receiving a benefit from the dam, a result not intended by the parties to the contract.  <u>Id.</u>  Similarly, in this case, as in <u>Klamath</u>, the SPA was entered into with qualified borrowers in mind but the language of the contract does not manifest a clear intent by the parties to grant qualified borrowers the right to enforce the Agreement.

13

1    The majority of district courts in the Ninth Circuit have
2   likewise concluded that qualified borrowers cannot reasonably
3   rely on an alleged manifested intent to confer rights upon them
4   since the SPA does not require that BAC modify all eligible
5   loans.  See Hammonds v. Aurora Loan Services, LLC, No. EDCV 10-
6   1025 AG (Opx), 2010 WL 3859069 (C.D. Cal. Sept. 27, 2010); Wright
7   v. Bank of America, N.A., No. CV 10-01723 JF (HRL), 2010 WL
8   2889117 (N.D. Cal. July 22, 2010); Hoffman v. Bank of America,
9   N.A., No. C 10-2171 SI, 2010 WL 2635773 (N.D. Cal. June 30,
10  2010); Simmons v. Countrywide Home Loans, Inc., No. 09cv1245
11  JAH(JMA), 2010 WL 2635220 (S.D. Cal. June 29, 2010); Zendejas v.
12  GMAC Wholesale Mortgage Corp., No. 1:10-CV-00184 OWW GSA, 2010 WL
13  2629899 (E.D. Cal. June 29, 2010); Marks v. Bank of America,
14  N.A., No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988 (D. Ariz. June
15  22, 2010); Lucero v. Countrywide Bank, N.A., No. 09cv1742 BTM
16  (BLM), 2010 WL 1880649 (S.D. Cal. May 10, 2010); Escobedo v.
17  Countrywide Home Loans, Inc., No. 09cv1557 BTM (BLM), 2009 WL
18  4981618, at *3 (S.D. Cal. Dec. 19, 2009); but see Marques v.
19  Wells Fargo Home Mortgage, Inc., No. 09-cv-1985-L(RBB), 2010 WL
20  3212131 (S.D. Cal. Aug. 12, 2010); Reyes v. Saxon Mortgage
21  Services, Inc., No. 09cv1366 DMS (WMC), 2009 WL 3738177 (S.D.
22  Cal. Nov. 5, 2009).  Rather, these courts have concluded that the
23  SPA only requires that BAC consider plaintiff's loan for
24  modification.  See Escobedo, 2009 WL 4981618, at *6.
25    Accordingly, BAC's motion to dismiss plaintiff's claim for
26  breach of contract based on the SPA is GRANTED without leave to
27  amend.
28  /////

**E.   Promissory Estoppel**

Plaintiff's fourth claim for relief asserts that BAC "made a representation to [p]laintiff that if he agreed to the terms of [the Plan], . . . he would receive a permanent HAMP modification." (Compl. ¶ 97.)  Plaintiff further asserts that he relied on BAC's alleged modification promise "to his detriment . . . and has lost the opportunity to fund other strategies to deal with his default and to avoid foreclosure." (Id. ¶ 99.)  BAC moves to dismiss plaintiff's promissory estoppel claim asserting that "[p]laintiff would not be offered a modification unless and until [p]laintiff met all conditions required for modification." (MTD at 18.)  BAC further asserts that plaintiff fails to allege detrimental reliance because "[h]ad plaintiff not made any trial payments, he would not have been able to fund other options, as he was still obligated to make his normal monthly payments, which exceeded the reduced payments he made under the Trial Period Plan." (Id.) (emphasis removed).

Under California law, a cause of action for promissory estoppel requires that plaintiff show "(1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed." Poway Royal Mobilehome Owners Assn. v. City of Poway, 149 Cal. App. 4th 1460, 1471 (2007) (citations omitted).  Under this doctrine, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Kajima/Ray Wilson v. Los Angeles County Metro. Transp.

15

1  <u>Auth.</u>, 23 Cal. 4th 305, 310 (2000) (quoting Restatement (Second)

2  of Contracts, § 90(1) (1981)).

3      Plaintiff fails to sufficiently allege a claim for

4  promissory estoppel.  First, as set forth in the analysis of

5  plaintiff's breach of contract claim, BAC made no promise to

6  provide plaintiff a permanent modification evidenced by BAC's

7  exhibits.  Rather, the plain terms of Exhibit C expressly placed

8  plaintiff on notice that issuance of a loan modification was not

9  guaranteed by simply sending in the requested documentation and

10 making trial period payments.  Indeed, the language of Exhibit C

11 provides that the modification was conditioned on BAC's

12 determination that plaintiff's information complied with the

13 Plan's requirements.  If BAC found that it did, only then would

14 it send plaintiff a modification agreement which both plaintiff

15 and BAC must have executed.  (RJN Exh. C.)  As such, BAC made no

16 express promise to modify plaintiff's loan.

17     Second, plaintiff's complaint does not sufficiently allege

18 substantial detriment.  Plaintiff alleges that his reliance on

19 BAC's alleged promise to modify his loan was to his detriment

20 because he lost the opportunity to pursue other strategies and

21 fund those strategies to deal with his default and avoid

22 foreclosure.  (Compl. ¶ 99.)  However, plaintiff fails to

23 substantiate this conclusory allegation with sufficient facts.

24 Even if plaintiff had not paid the reduced payments, he would

25 have been obligated to pay the full amount of the mortgage

26 because the Plan states that "all terms and provisions [of the

27 Note and Mortgage]. . . remain in full force."  (RJN Exh. C at

28 Section 4 ¶ D.)  In addition, plaintiff admits that as of January

16

2009, he "could no longer pay the full mortgage payment due to his reduced earnings." (Compl. ¶ 58.) Thus, it is unclear how plaintiff's other alleged opportunities were sacrificed in order to comply with BAC's requests. As such, the court cannot find plaintiff has alleged substantial detriment on the purported promise.

Accordingly, BAC's motion to dismiss plaintiff's claim for promissory estoppel is GRANTED with leave to amend.

**F.   Rosenthal Fair Debt Collection Practices Act**

Plaintiff's fifth claim for relief alleges that BAC violated California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). (Compl. ¶¶ 102-104.) Plaintiff argues that because California's nonjudicial foreclosure statute specifically exempts from the RFDCPA trustees conducting a trustee sale and because no similar exemption is made for lenders and servicers, "such actors may be held liable for any unlawful debt collection activities during foreclosure." (Opp'n at 13.) BAC moves to dismiss plaintiff's RFDCPA claim asserting that plaintiff "does not allege any debt under the meaning of the RFDCPA[,] . . . and the claim does not specifically allege any false, deceptive, or unfair means." (MTD at 19.)

The RFDCPA precludes a debt collector from collecting or attempting to collect from a debtor on a consumer debt in a threatening or harassing manner. See Cal. Civ. Code § 1788 *et seq*. (West 2010). Specifically, the RFDCPA prohibits threats, obscenity, misleading or false communications, and overreaching by debt collectors. Id. §§ 1788.10-.12, 1788.14-.16. The RFDCPA defines a debt collector as "any person who in the ordinary

17

course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Id. § 1788.2(c).

Numerous courts within the Ninth Circuit have concluded that foreclosure pursuant to a deed of trust is not the collection of a debt within the meaning of the RFDCPA. Lal v. American Home Servicing, Inc., 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010); Izenberg v. ETS Servs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008); see Wilson v. JPMorgan Chase Bank, NA., No. CIV. 2:09-863 WBS GGH, 2010 WL 2574032, *10 (E.D. Cal. June 25, 2010); Chernik v. Bank of America Home Loans, No. 2:09-cv-02746 JAM-DAD, 2010 WL 3269797, *3 (E.D. Cal. Aug. 18, 2010); Ricon v. Recontrust Co., No. 09-937, 2009 WL 2407396, at *4 (S.D.Cal. Aug. 4, 2009) (dismissing with prejudice plaintiff's unfair debt collection claims in foreclosure case); Pittman v. Barclays Capital Real Estate, Inc., No. 09-0241, 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009) (dismissing with prejudice plaintiff's Rosenthal Act claim in foreclosure case because a "residential mortgage loan does not qualify as a 'debt' under the statute"); Gallegos v. Recontrust Co., No. 08-2245, 2009 WL 215406, at *3 (S.D. Cal. Jan. 28, 2009) (dismissing RFDCPA claim in foreclosure case). Further, several courts within this Circuit have also concluded that in mirroring certain provisions of the Federal Debt Collection Practices Act ("FDCPA"), a mortgage servicing company or any assignee of the debt is not considered a "debt collector" under the RFDCPA. Lal, 680 F. Supp. 2d at 1224 (citing Nool v. HomeQ Servicing, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009); Olivier v. NDEX West, LLC, No. 1:09-CV-00099 OWW GSA, 2009 WL 2486314, at *3 (E.D. Cal. Aug. 10, 2009); Cordova v.

18

America's Servicing Co., No. C 08-05728 SI, 2009 WL 1814592, at *2 (N.D. Cal. June 24, 2009).

Plaintiff's complaint alleges that "[BAC] is a 'debt collector' within the meaning of [the RFDCPA]." (Compl. ¶ 102.) Under prevailing law among California district courts, defendant BAC cannot be liable for such conduct under the RFDCPA because the foreclosure is not a debt and BAC is not a debt collector within the meaning of the statute.   Accordingly, the defendant's motion to dismiss plaintiff's fifth claim for relief for violations of the RFDCPA is GRANTED with leave to amend.

**G.   California Business & Professions Code § 17200**

In his sixth claim for relief, plaintiff alleges that BAC violated § 17200 of the California Business and Professions Code ("UCL") by using unfair and fraudulent business practices. (Compl. ¶ 108.)   BAC moves to dismiss plaintiff's UCL claim contending that plaintiff does not sufficiently "allege[] any predicate unlawful, unfair, or fraudulent acts."[4]   (MTD at 20.)

UCL forbids acts of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice."   Cal. Bus. & Prof. Code § 17200.   UCL "incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law." Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008); see also

---

[4]     Defendant also moves to dismiss on the basis that plaintiff has not sufficiently alleged loss of money or property, and thus, does not have standing to sue. (MTD at 20.)   Because the court concludes that plaintiff has not stated a viable claim based on the factual allegations regarding defendant's conduct, the court does not reach the merits of whether plaintiff has sufficiently alleged loss of money or property.

1  <u>Farmers Ins. Exch. v. Superior Court</u>, 2 Cal. 4th 377, 383 (1992).

2  "California's UCL has a broad scope that allows for 'violations

3  of other laws to be treated as unfair competition that is

4  independently actionable' while also 'sweep[ing] within its scope

5  acts and practices not specifically proscribed by any other

6  law.'"  <u>Hauk v. JP Morgan Chase Bank U.S.A.</u>, 552 F.3d 1114 (9th

7  Cir. 2009) (internal citations omitted).  "Violation of almost

8  any federal, state, or local law may serve as the basis for a UCL

9  claim."  <u>Plascencia</u>, 583 F. Supp. 2d at 1098 (citing <u>Saunders v.</u>

10 <u>Superior Court</u>, 27 Cal. App. 4th 832, 838-839 (1994)).

11     Because plaintiff's UCL claim against BAC is predicated on

12 facts supporting his breach of contract, breach of the implied

13 covenant of good faith and fair dealing, promissory estoppel, and

14 violation of the RFDCPA claims, all of which the court has

15 dismissed, the defendant's motion to dismiss plaintiff's sixth

16 claim for relief for violations of California Business &

17 Professions Code § 17200 is GRANTED with leave to amend.

18                            **CONCLUSION**

19     For the foregoing reasons, BAC's motion to dismiss is

20 GRANTED.  Plaintiff's claims are dismissed with leave to amend.

21 Plaintiff is granted fifteen (15) days from the date of this

22 order to file a first amended complaint in accordance with this

23 order.  Defendant is granted thirty (30) days from the date of

24 service of plaintiff's first amended complaint to file a response

25 thereto.

26 /////

27 /////

28 /////

1    IT IS SO ORDERED.

2  DATED: January 13, 2011

3

4                                    FRANK C. DAMRELL, JR.
                                     UNITED STATES DISTRICT JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28